Nestor **RIVERA–COLÓN, Plaintiff,**

v.

**Miguel A. TORRES–DÍAZ, et al., Defendants.**

**CIVIL NO. 16–2045 (GAG)**

United States District Court, D. Puerto Rico.

Signed 05/17/2017

Enrique A. Baez–Godinez, Law Office of Enrique A. Baez, Francisco R. Gonzalez–Colon, Francisco J. Gonzalez–Magaz, F.R. Gonzalez Law Office, for Plaintiff.

Idza Diaz–Rivera, P.R. Department of Justice, Clarisa Sola–Gomez, Faccio & Pabon Roca, Raul Castellanos–Malave, Development and Construction Law Group LLC, Ricardo Burgos–Vargas, Michael C. McCall, Law Office of Michael C. McCall, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, United States District Judge

This case concerns a resident's efforts to combat increased traffic noise in his neigh-

borhood. Plaintiff Nestor Rivera–Colón ("Rivera–Colón")[1] brings this amended complaint against the Municipality of Caguas, the Puerto Rico Highway and Transportation Authority ("PRHTA"), and individual capacity defendants (collectively, "Defendants"),[2] alleging violation of a federal environmental statute regulating noise. (Docket No. 52.)

Presently before the Court is Defendants' motion to dismiss the amended complaint.[3] (Docket No. 52.) Defendants raise two bases for dismissal. First, the Court lacks subject-matter jurisdiction to entertain the amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Second, even if this Court has jurisdiction over Rivera–Colón's claims, the amended complaint fails to state a claim under Rule 12(b)(6). Rivera–Colón opposed the motion, and Defendants subsequently replied. (Docket Nos. 58, 59.) After review of the parties' submissions and the pertinent law, the Court **GRANTS** Defendants' motion to dismiss the amended complaint at Docket No. 52.

## I. Factual and Procedural Background

Rivera–Colón is a resident and neighbor of the Villa Blanca urban community in the Municipality of Caguas, Puerto Rico. (Docket No. 42 ¶ 6.) In 2004, the PRHTA designed and built a road to connect the Puerto Rico Toll Expressway, known as Highway 30, with Puerto Rico Road # 1 in Caguas. Id. ¶ 12. As part of its construction, it converted and widened residential Zafiro Street into an expressway, the José Garrido Avenue. Id. ¶ 13.

Since construction work began on Zafiro Street, and before the street became one of the most circulated avenues of Caguas, Rivera–Colón and other Villa Blanca residents filed noise complaints at the PRHTA and the Municipality of Caguas. Id. ¶ 14. Rivera–Colón and his neighbors also filed noise complaints requesting administrative intervention before the Puerto Rico Environmental Quality Board (Spanish acronym "JCA"), the United States Environmental Protection Agency ("EPA"), and the Puerto Rico Ombudsman Office. Id.

Rivera–Colón alleges that he and his neighbors have gone from living in a peaceful environment to having to withstand intolerable noise. Id. ¶¶ 15–16. Since the conversion of Zafiro Street into the José Garrido Avenue, the pervasive noise has disrupted their normal activities, such as having conversations, listening to the radio, watching television, and sleeping. Id. They previously petitioned the state and federal entities to close the access to the José Garrido Avenue or to expropriate their homes. Id. ¶ 17.

1. Plaintiff purports to represent the "De Facto Community Association of the actual or former residents and owners of 84 homes of the Villa Blanca Urban Community" in the form of a class action. (See Docket No. 42.) However, Plaintiff has not moved the Court for certification of a class, nor presented evidence to support certification of a class under Rule 23. See Fed. R. Civ. P. 23(a)–(c); Baxter v. Palmigiano, 425 U.S. 308, 310 n.1, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (no class action without first identifying and certifying the class). Therefore, given the purely legal questions presented here, the Court declines to address the undeveloped issue of class certification at this stage.

2. The Amended Complaint also names Hon. William Miranda Torres, in his personal and official capacity as Mayor of the Municipality of Caguas, and Engineer Miguel A. Torres–Díaz, in his personal and official capacity as Secretary and Director of PHRTA. (Docket No. 42).

3. The Municipality of Caguas moved to dismiss (Docket No. 52), which was joined by PRHTA, (Docket No. 53), and Miranda Torres and Torres–Díaz, in their individual capacities. (Docket No. 54).

Rivera–Colón and his neighbors' efforts were unsuccessful. While these state and federal agencies acknowledged a need for change, they either lacked the authority or the funds to provide any assistance or to expropriate the homes. Id. ¶ 18. In 2015, Rivera–Colón filed his first federal complaint in this district against these defendants arising under analogous facts. Rivera–Colón v. Torres–Díaz, No. 15–1048 (DRD), ECF No. 1 (D.P.R. January 21, 2015). The complaint was dismissed for lack of subject-matter jurisdiction because Rivera–Colón did not comply with the statute's pre-suit notice requirements.[4] Rivera–Colón v. Torres–Díaz, 174 F.Supp.3d 667, 672–73 (D.P.R. 2016).

Undeterred, Rivera–Colón filed a second complaint in federal court, once again alleging violations under the Noise Control Act, as amended by the Quiet Communities Act of 1978, 42 U.S.C. §§ 4901–4918, the United States Constitution, and the Constitution of Puerto Rico. (Docket No. 42 ¶¶ 19; 24–30.) As relief, Rivera–Colón demands: (1) compensation for the residents of Villa Blanca for an amount no less than $200,000 for every affected home; (2) equitable relief in the form of a return to the conditions before Zafiro Street became the José Garrido Avenue or that their homes be expropriated and paid a market-value, which has been appraised at $183,000 plus $40,000 per home; (3) a permanent injunction ordering Defendants to reinstate conditions before the conversion of their residential area road to an expressway; and (4) an injunction to restrain Defendants from further adverse actions affecting his environmental, property, and liberty rights. Id. ¶ 39. Rivera–Colón also seeks damages under Puerto Rico's tort statute, Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141–5142. Id. ¶¶ 25–35.

## II. Standard of Review

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002) (citations omitted).

Rule 12(b)(1) requires dismissal when the court lacks subject-matter jurisdiction to entertain a complaint. Fed. R. Civ. P. 12(b)(1). In considering dismissal, the Court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Once jurisdiction is challenged, "it is plaintiff's burden to establish that the court has jurisdiction." Id. A Rule 12(b)(1) challenge includes standing, ripeness, mootness, and sovereign immunity. See Valentín v. Hospital Bella Vista, 254 F.3d 358, 362–63 (1st Cir. 2001).

"Federal Courts are courts of limited jurisdiction[.]" Rolón v. Rafael Rosario & Assocs. Inc., 450 F.Supp.2d 153, 156 (D.P.R. 2006). Thus, a court has "the responsibility to police the border of federal jurisdiction" Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001). Courts "must rigorously enforce the jurisdictional limits [standards] that Congress chooses." Del Rosario Ortega v. Star Kist Foods, Inc., 213 F.Supp.2d 84, 88 (D.P.R. 2002) (citing Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir. 1995).

---

4. The previous dismissal for lack of subject-matter jurisdiction was without prejudice. Rivera Colón, 174 F.Supp.3d at 673. As such, that decision has no *res judicata* effect on this suit because the earlier dismissal did not operate as an adjudication on the merits of the claim. Fed. R. Civ. P. 41(b); see also 18A Wright & Miller, Fed. Prac. and Proc. Juris. § 4436 (2d ed. 2017).

Rule 12(b)(6), by contrast, provides that a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires determining whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555, 127 S.Ct. 1955. The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955).

The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor," even if seemingly incredible. Sepulveda–Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010). Instead, "[t]he make-or-break standard ... is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." Id. at 29; see also Soto–Torres v. Fraticelli, 654 F.3d 153, 159 (1st Cir. 2011).

### III. Discussion

#### A. The Noise Control Act of 1972

The Noise Control Act ("NCA"), 42 U.S.C. §§ 4901–4918, is a federal statute aimed at addressing the adverse environmental, physical, and psychological effects of inadequately controlled noise caused by vehicles and machinery in interstate commerce. See 42 U.S.C. § 4901(b) ("It is the policy of the United States to promote an environment for all Americans free from noise that jeopardizes their health or welfare."). The NCA contemplates both federal and state regulation of certain types of noise pollution in furtherance of this goal. See Com. of Puerto Rico, ex rel. Sec'y of Justice v. Rumsfeld, 180 F.Supp.2d 145, 149 (D.D.C. 2002), vacated sub nom. Com. of Puerto Rico ex rel. Sec'y of Justice v. Rumsfeld, 2003 WL 21384576 (D.C. Cir. June 10, 2003). The NCA authorizes the EPA to establish noise regulations for "transportation vehicles and equipment, machinery, appliances, and other products in commerce" which constitute major sources of noise. §§ 4901, 4904. However, the NCA recognizes that, despite certain federal regulations, the "primary responsibility for control of noise rests with State and local governments[.]" § 4901(a)(3).

The NCA, as amended by the Quiet Communities Act of 1978, specifically prohibits six noise creating acts. 42 U.S.C. § 4909. The section dictates as follows: (1) no manufacturer may distribute a new product not in conformity with NCA's noise emission standards; (2) no removal or disabling of any noise control device on a product regulated under the NCA's noise emission standards; (3) no manufacturer may distribute a new product not in conformity with the statute's information requirements regarding noise; (4) no removal of any noise information notice on a product regulated under the NCA's product labelling regulations; (5) no importing of any product violating the NCA's noise emissions standards; and (6) no failure to comply with statute's other provisions relating to enforcement (§ 4910(d)) and recordkeeping (§ 4912(a)), or other noise emissions standards specific to railroads

(§ 4916) and motor carriers (§ 4917). § 4909(a)(1)–(6).

To help enforce these prohibitions, the NCA authorizes suits private citizens to sue any person, including the United States or any other governmental instrumentality or agency, to enforce the statute's prohibitions. § 4911(a). To sue under the NCA, citizens must strictly comply with certain requirements, including an allegation of a specific "noise control" violation and notice of intent to sue. "No action may be commenced" under the citizen suit provision until "sixty days after the plaintiff has given notice of the violation" to the EPA Administrator and any alleged violator.[5] § 4911(b). "Notice under this subsection shall be given in such a manner as the [EPA Administrator] shall prescribe by regulation." Id.

Accordingly, the EPA sets out a strict notice process as a prerequisite to the commencement of a citizen suits under this Act. See 40 C.F.R. §§ 210.1–210.3. Specifically, section 210.2 sets forth the regulatory requirements for service of notice, and states in its relevant part:

§ 210.2 Service of Notice.

. . . .

d) Notice given in accordance with the provisions of this part shall be deemed to have been served *on the date of receipt.* If service was accomplished by mail, the date of receipt will be deemed to be *the date noted on the return receipt card.*

See 40 C.F.R. § 210.2 (emphasis added). Piecing the statutory language together, no citizen suits may be brought until sixty days after the EPA Administrator has received notice of the alleged violation. The purpose of the notice requirement is two-

fold: it provides an opportunity for the agency to investigate the alleged violation and encourages resolution by settlement rather than litigation. See Garcia v. Cecos Intern., Inc., 761 F.2d 76, 81–82 (1st Cir. 1985).

"As a general rule, if an action is barred by the terms of a statute, it must be dismissed." Hallstrom, 493 U.S. at 31, 110 S.Ct. 304. Moreover, as applicable to statutory notice requirements, "[t]he Supreme Court has demanded strict adherence to statutory provisions for citizen's suits in environmental litigation." Garcia, 761 F.2d at 81; see also Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 18, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Further, this District has recognized that "no action may be commenced unless notice of the violation is given to the Administrator of the Environmental Protection Agency and any alleged violator(s), at least sixty (60) days prior to the commencement of the action." Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002) (internal quotations omitted). Strict judicial enforcement of the NCA's statutory notice requirement also comports with Congress's intent in creating a citizen suit in the first instance: the "primary function of the provisions for citizen suits is to enable private parties to assist in enforcement efforts where Federal and State authorities appear unwilling to act." Id. at 107–09.

Defendants argue the 60-day notice requirement is jurisdictional. (Docket No. 52 at 11.) Specifically, Defendants sustain that Rivera–Colón failed to satisfy the jurisdictional prerequisite under the NCA statute of giving notice to the EPA Admin-

---

5. "Since 1970, a number of other federal statutes have incorporated notice provisions patterned after § 304" of the Clean Air Act. Hallstrom v. Tillamook Cnty, 493 U.S. 20, 23, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989). Fol-

lowing Supreme Court guidance, these 60-day notice provisions, and interpretive cases, are essentially interchangeable. Id. at 23, 110 S.Ct. 304 n.1.

istrator at least 60 days prior to beginning of the action. Id. In opposition, Rivera–Colón alleges that exhibits attached to the original complaint and various U.S. Postal Service Certified Mail receipts, prove he provided the EPA Administrator with timely notice of his claim. (Docket No. 1–2.)

A careful examination of the record and exhibits attached to the original complaint in this case reveals that the date on the EPA Administrator's return receipt is April 11, 2016 and that Rivera–Colón filed suit on June 8, 2016. Id. Rivera–Colón's submission at Docket No. 22–2 is insufficient to satisfy the notice of intent to sue requirement. See 40 C.F.R. §§ 210.1–210.3 ("Notice given in accordance with the provisions of this part shall be deemed to have been served on the date of receipt. If service was accomplished by mail, the date of receipt will be deemed to be the date noted on the return receipt card.") Thus, only fifty-eight days passed between the date of notice and filing of the present suit. Consequently, Rivera–Colón failed to comply with the sixty-day statutory notice requirement under the NCA, 42 U.S.C. § 4911(b), which clearly mandates dismissal. See Hallstrom, 493 U.S. at 31, 110 S.Ct. 304.

However, it is not clear whether the NCA's sixty-day notice requirement is jurisdictional. In Hallstrom, the Supreme Court affirmed dismissal for failure to comply with a statutory notice requirement, but declined to resolve whether dismissal was based on lack of subject-matter jurisdiction or based on a procedural defect. See Hallstrom, 493 U.S. at 31, 110 S.Ct. 304 ("we need not determine whether [the statute's 60–day notice requirement] is jurisdictional in the strict sense of the term."). Similarly, in the context of the notice provisions for a similar environmental statute, the First Circuit has recognized that regardless of whether "notice requirements [are] strictly jurisdictional or not, they remain mandatory conditions precedent to the filing of a citizen suit." Paolino v. JF Realty, LLC, 710 F.3d 31, 36 n.4 (1st Cir. 2013) (holding the requirements of pre-suit notice satisfied where the notice identifies putative plaintiffs, provides contact information, and give defendants an opportunity to cure alleged violations).

This distinction matters. Subject-matter jurisdiction defines a court's power to hear a case, while failure to state a claim relates to the claim's merits.[6] See generally 5B Wright & Miller, Fed. Prac. and Proc. Juris. § 1349 (2d ed. 2017). Here, if the sixty-day notice requirement is jurisdictional, then the Court lacks the power to address Defendant's arguments under Rule 12(b)(6), and the claim must be dismissed without prejudice.[7] On the other hand, if the notice requirement is not jurisdictional, then the Court can assess the plausibility of the amended complaint, and any dismissal would be with prejudice. Given that the question remains unclear in light of the First Circuit's recent decision

6. A hypothetical illustrates the importance of distinction. Assume Defendants waived the 60–day notice requirement. If notice is jurisdictional, then the waiver is irrelevant, because parties cannot create jurisdiction by consent. E.g., Am. Fiber & Finishing, Inc. v. Tyco Healthcare Grp., LP, 362 F.3d 136 (1st Cir. 2004) (citation omitted). If, on the other hand, notice is procedural—a statutory precondition for a claim—then waiver of the notice requirement would be effective.

7. This was the outcome of Rivera–Colón's first federal lawsuit. Rivera Colón, 174 F.Supp.3d at 673. As evident here, one practical effect of viewing the statutory notice requirement as strictly jurisdictional is that a plaintiff may attempt to bring the same claim multiple times. Rivera–Colón's second bite at the apple has essentially afforded Defendants the type of effective (though statutorily defective) notice described in Paolino.

in Paolino, this Court determines that on these particular facts, Rivera–Colón's failure to provide timely notice does not operate as a jurisdictional bar to prevent this Court from addressing the merits of his claims.

■ Defendants argue that even if Rivera–Colón had satisfied the NCA's notice requirement, the amended complaint does not state a viable claim under the statute. Specifically, Defendants explain that the NCA does not prohibit the type of conduct alleged, namely, a maximum sound decibel for traffic near a residential neighborhood. (Docket No. 52, at 14.)

In opposition, Rivera–Colón seeks to cabin his claim within the NCA's catch-all requirement for noise emissions from motor carriers engaged in interstate commerce. (Docket No. 58 ¶¶ 36–38; see also 42 U.S.C. §§ 4909(a)(6); 4917.) In support, Rivera–Colón points to three specific acts: (1) the sound decibels in the Villa Blanca neighborhood "jumped" from an "acceptable parameter" of 45 to 67–85 decibels; (2) residents' problems with "pluvial metal covers which cause additional noise and vibrations inside their homes," and (3) the EPA and JCA's findings that Plaintiff and his neighbors have confronted "unbearable noise conditions 24 hours a day and have done so continuously for some 10 years." (Docket No. 58 ¶ 39.) Rivera–Colón believes the NCA prohibits these acts, and thus, his amended complaint must survive 12(b)(6) plausibility scrutiny.

As a general matter, Rivera–Colón's reading of the NCA is incompatible with the statute's black letter law. The NCA establishes "federal noise emission standards for certain products distributed in commerce." 42 U.S.C. § 4901(a)(3). In other words, this environmental statute regulates noise emission standards in relation to narrowly defined commercial transportation machinery, for example, interstate rail and motor carriers.[8] See 42 U.S.C. §§ 4916, 4917. Rivera–Colón does not allege Defendants manufacture or distribute products that violate noise emission standards. Nor does Rivera–Colón allege Defendants import or transport products violating the statute's noise emissions standards. Rivera–Colón's reliance on section 4909(a)(6), the catch-all provision of the NCA's prohibited acts, is equally misplaced because that section applies to other noise emissions standards specific to railroads (§ 4916) and motor carriers (§ 4917). Rivera–Colón does not allege Defendants operate railroads or motor carriers. Simply put, the NCA does not prohibit this type of harm Rivera–Colón alleges. See § 4909(a)(1)–(6).

The three specific acts Rivera–Colón alleges are no help to his claim either. (See Docket No. 58 ¶ 39.) First, assuming the Villa Blanca sound decibels "jumped," Rivera–Colón does not allege Defendants emit this additional noise. Second, the "pluvial metal covers" causing problems on the Villa Blanca road are not noise emitting, under the terms of the statute. Finally, the purported findings of the EPA and JCA do not plausibly attribute any "unbearable noise conditions" to the conduct of the Defendants.

■ Finally, the NCA directs the EPA "to promulgate regulations establishing noise emission standards applicable to manufacturers who design products found to be major sources of noise pollution, such as construction and transportation equipment." Com. of Puerto Rico, ex rel. Sec'y of Justice v. Rumsfeld, 180 F.Supp.2d 145, 149 (D.D.C. 2002) (emphasis added); see

---

**8.** Section 4917 defines "motor carrier" as "a person providing motor vehicle transporta- tion for compensation." 49 U.S.C. § 13102.

also 42 U.S.C. § 4905. All six "prohibited acts" under the NCA, 42 U.S.C. § 4909, that could possibly serve as basis for a citizen suit must arise from a violation to an EPA's specific noise control regulation-requirement. Rivera–Colón "has alleged the existence of no relevant regulation" violated by Defendants and "has therefore not stated a claim for which relief can be granted." See Clinton Cmty. Hosp. Corp. v. S. Maryland Med. Ctr., 374 F.Supp. 450, 460 (D. Md. 1974), aff'd, 510 F.2d 1037 (4th Cir. 1975).

Altogether, even if Rivera-Colón had satisfied the 60–day notice requirement, his claim falls outside the statute's parameters. Therefore, Rivera–Colón's NCA claim must be dismissed.

### B. Fourteenth Amendment Claims

■ Alternatively, Rivera-Colón alleges constitutional infringement of his right to life, liberty, and property protected by the Fourteenth Amendment. (Docket No. 42 ¶¶ 19; 24–30.) Defendants object that Rivera-Colón has not distinguished "between procedural and substantive due process" and thus failed to adequately plead the elements of any due process violation. (Docket No. 52 at 17.) Although Rivera-Colón does not mention it, civil actions for a deprivation of constitutional rights must be alleged under Section 1983. 42 U.S.C. § 1983. Typically, a comprehensive remedial statute—such as the NCA—shows "congressional intent to preclude the remedy of suits under § 1983." Sea Clammers, 453 U.S. at 20, 101 S.Ct. 2615; see also Garcia, 761 F.2d at 82 (holding that the more specific and comprehensive Resource Conservation and Recovery Act foreclosed any section 1983 claims).

In any event, Rivera-Colón has not plausibly plead any due process or equal protection claim. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ("facial plausibility" is established by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The second cause of action in the amended complaint—titled "violations of due process rights under the Constitution of the United States"—does not set out the legal elements of such a claim, nor any supporting factual content. (Docket No. 42, at 10–11.) Instead, Rivera-Colón simply concludes his property rights were infringed without due process and equal protection. Id. at 11. As to the equal protection claim, Defendants correctly note that Rivera-Colón's references to equal protection do not show how the concept applies to this action.[9] (Docket No. 52, at 21.)

■ To state a claim for deprivation of procedural due process rights, a plaintiff must allege (1) a deprivation of a right protected by the Fourteenth Amendment and (2) that the procedures available violated due process of law. See García–González v. Puig–Morales, 761 F.3d 81, 88 (1st Cir. 2014). The first step is to plead a legally plausible allegation of a "protected property interest" recognized by state law. See Caesars Mass. Mgmt. Co. v. Crosby, 778 F.3d 327, 332 (1st Cir. 2015). Here, Rivera-Colón has not plausibly alleged that the noise caused by the conversion of Zafiro Street into Jose Garrido Avenue constitutes a property interest protected under Puerto Rico law. Further, the amended complaint does not plausibly allege constitutionally inadequate procedures. Rather, Rivera-Colón filed grievances and administrative complaints before numerous federal, state, and local agen-

---

9. The amended complaint includes two passing references to the phrase "equal protection." Equal protection does not apply here, since Rivera-Colón does not allege discrimination by any state actor. See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

cies. (Docket No. 42, at 7.) These efforts proved unsuccessful, but the existence of these channels establishes the type of fair procedure—i.e. notice and an opportunity to be heard—guaranteed by the due process clause of the Constitution. See Parratt v. Taylor, 451 U.S. 527, 534–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (holding that the existence state remedies are sufficient to satisfy the requirements of due process for a section 1983 action); Herwins v. City of Revere, 163 F.3d 15, 18 (1st Cir. 1998) (same).

 To state a viable substantive due process claim, a plaintiff must plausibly allege the government's violation of a protected property interest in a manner that is inherently impermissible, regardless of protective procedures, in such a manner that "shocks the conscience." Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008). The government conduct alleged in the amended complaint—essentially, road construction—does not meet this high standard. Accordingly, Rivera–Colón has failed to allege any plausible constitutional claim.

C. Puerto Rico State Law Claims

Finally, Rivera–Colón alleges violations under the Puerto Rico Constitution and seeks a relief in damages under articles 1802 and 1803 of Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141–42 (Docket No. 42 ¶¶ 33–35.)

 "As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims." Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). In cases where a plaintiff's federal claims are dismissed, "the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness,

and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. The use of supplemental jurisdiction in these circumstances is determined on a case-by-case, discretionary basis. See Rodríguez Cirilo v. García, 908 F.Supp. 85, 92 (D.P.R.1995) ("The assertion of supplemental jurisdiction over state law claims is within a federal court's discretion.") (citations omitted).

 The NCA recognizes that state and local governments are primarily responsible for regulating noise emissions. 42 U.S.C. § 4901(a)(3). Here, Rivera–Colón federal claims have been dismissed. As such, the remaining issues of Puerto Rico state law are appropriately resolved by Puerto Rico state courts. Doral Mortg. Corp., 57 F.3d at 1177 (one factor in a court's discretionary determination of supplemental jurisdiction is "when the state law that undergirds the nonfederal claim is of dubious scope and application."); see also 28 U.S.C. § 1367(c)(1). Therefore, the Court declines to exercise supplemental jurisdiction over Rivera–Colón's Puerto Rico state law claims, and those claims are accordingly dismissed without prejudice.

IV. Conclusion

For all the reasons stated above, Defendants' motion to dismiss at Docket No. 52 is hereby **GRANTED**. Plaintiff's federal claims are **DISMISSED with prejudice** and Plaintiff's Puerto Rico state law claims are **DISMISSED without prejudice**.

**SO ORDERED.**